THOMAS POWELL *v.* JOHN A. MORTON and others.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

C. M. *Jones*, for the plaintiff.

L. C. *Duncan*, for the appellant.

GARLAND, J. The plaintiff having obtained a judgment against Stewart, Morton & Co., and another against Williams and Kellar, had his executions levied on a foundry and its contents, in the *Faubourg* St. Mary, which, after the issuing and dissolution of various writs of injunction, was, with its implements, stock and furniture, sold by the Sheriff. The proceeds being in his hands, A. G. Blanchard presented his claim, alleging that he was the proprietor of the foundry, and had rented it to the defendants, and claimed $1850, as being due for rent, with a privilege on the proceeds of the property sold, for that amount. He claims rent at the rate of $100 per month from the 1st of September, 1840, to the 1st of August, 1841; and from the latter period to the 31st of December of the same year, at the rate of $150 per month. It is admitted that the lot of Blanchard adjoins that of Kellar, which was sold; and that it has a front of sixty feet, and formed a part of the foundry. The office, and pattern shop were on it, and a number of patterns, with a variety of materials, tools, and other articles, which are specified in an inventory made and filed in the case. On the 1st of August, 1839, N. Benoist, acting as agent for some person whose name is not mentioned, rented to Stewart, Morton & Co. the foundry, known by the name of St. Mary, which is represented as being on a lot having sixty-four feet front on Tchapitoulas street, at the rate of $100 per month, the lease to continue for two years, and the rent payable monthly, under a penalty of the lease being declared null, if more than two months rent is at any time in arrear. This lot is not shown to be the property of Blanchard; and the probability is, that it is not; as it is not of the same size with that admitted to be his. Gothiel, a witness introduced by Blanchard, says, that he was the owner of the foundry for some time in the year 1841. That

from the 1st of April to the 1st of August, 1841, he agreed to give Blanchard $100 per month for his lots, and after the 1st of August, at the rate of $150 per month.   He says, that he had taken the lease of Stewart, Morton & Co., and that he retroceded the foundry to Benoist, in November of that year.   He says, that he believes the sum of $1100, claimed by Blanchard is due.   From the testimony of the deputy sheriff, it appears that at the time of, and after the seizure by him, the articles on Blanchard's lot were kept separate from those on the other lot ; and Powell, the plaintiff in the executions, was present at the sale, and requested the Sheriff to keep the articles on Blanchard's lot separate, as he might claim rent for it.   It is further shown that Blanchard and Kellar were very intimate ; that the former was frequently at the office, and in the foundry, and appeared, by his inquiries, and the interest he took, to be interested in it, and no one ever heard of his claiming any thing for rent until after the sale by the Sheriff.   He was at the sale, and purchased some small articles, but never said any thing about his claim for rent, until afterwards, although the property on his lot was seized, and a keeper put in possession of it for some time previous the sale.

It is further shown that there has been a great deal of litigation in relation to this property, of all which, Blanchard was cognizant ; yet, he never asserted his claim, although rent for seventeen months was owing, according to his account.

The Judge of the Commercial Court was of opinion that the claim was not founded in good faith ; that it was very extraordinary that Blanchard never asserted it during all the litigation that was going on between Powell and Kellar, and Williams and Benoist and Gothiel his *locum tenens,* although he was the son-in-law of Benoist, and lived in the house with him.   He therefore dismissed the claim with costs, and Blanchard has appealed.

The answer to the claim set up; in plain terms charges the claim to be simulated.   It is alleged that Blanchard was a partner, or otherwise interested in the foundry.   That if he was not, and had a claim for rent, he has lost his right to any privilege by his neglect to assert his claim, and permitting fifteen days to expire after the property went into the possession of other persons.

It is the duty of the intervening party to make out his case sa-

tisfactorily. He was notified by answer, that the want of good
faith on his part was alleged, and it was his duty to make out a
fair claim. The extraordinary delay in presenting the demand,
is unaccounted for. There is but one witness who says that
Blanchard was to be paid, and he proves but little more than half
the time for which rent is charged. The Judge below had an op-
portunity of seeing all the witnesses, and of hearing them testify.
He has thought the testimony suspicious, and insufficient to sup-
port the claim ; and we cannot say, from an inspection of it, that
he erred.

*Judgment affirmed.*